UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────┐
```

EDWARD PINCOVER,

                              Plaintiff,                    21 Civ. 3524 (PAE)

                    -v-
                                                            OPINION & ORDER

J.P. MORGAN CHASE BANK, N.A. *et al.*,

                              Defendants.

```
└─────────────────────────────────────────────┘
```

PAUL A. ENGELMAYER, District Judge:

This case arises from the theft of more than $325,000 from plaintiff Edward Pincover's

("Pincover") deposit account held at defendant J.P. Morgan Chase Bank, N.A. ("Chase").  The

thieves deposited the stolen funds into accounts held with, among others, defendants KeyBank,

N.A. ("KeyBank"), Wells Fargo, TD Bank, N.A. ("TD Bank"), and PNC Bank, N.A. ("PNC").

Chase has compensated Pincover for some, but not all, of his losses; Pincover alleges that

$150,000 remains owed to him.  Pincover brings claims here against Chase for negligence,

unjust enrichment, breach of contract,[1] and for violations of the New York Uniform Commercial

Code ("N.Y. UCC") § 4-401 and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §

1693, *et seq*.  Pincover also brings claims of unjust enrichment and negligence against KeyBank

and Wells Fargo.[2]

---

[1] Pincover brings claims for both "breach of contract" and for "fraudulent transactions within the
thirty days of notice."  *See* Dkt. 28 ("FAC") at 8.  Because the latter arises from an obligation
imposed by the Chase deposit agreement governing Pincover's account ("Agreement"), the
Court construes it as a breach of contract claim.

[2] TD Bank has not appeared in the case, and Pincover has not filed proof of service.  An order to
show cause for failure to prosecute TD Bank is issuing contemporaneous with this decision.  On
July 7, 2021, the Court dismissed PNC Bank from this case with prejudice.  *See* Dkt. 37.

Before the Court are defendants' motions to dismiss Pincover's First Amended Complaint ("FAC") in its entirety under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants in part and denies in part Chase's motion to dismiss, and grants KeyBank's and Wells Fargo's motions to dismiss in their entirety.

## I.    Background

### A.    The Parties

Pincover is over 80 years old. During the events at issue, he was a resident of the Upper East Side Rehabilitation and Nursing Center, located at 211 East 79th Street in Manhattan. FAC ¶ 7. He also maintains a residence at 45 West 81st Street in Manhattan, but has not resided at the West 81st address in more than two years; his representatives pick up his mail for him from that address. *Id.* ¶¶ 7, 27. Pincover is not married and has never been, he has no children, and therefore, he alleges, he has no one to help him navigate paperless bank statements. *Id.* ¶ 18. The FAC alleges that Pincover is neither computer nor internet savvy enough to access paperless statements on his own. *Id.* ¶ 17.

Chase and J.P. Morgan Chase & Co.[3] are alleged to be foreign corporations authorized to do business in New York, including maintaining a branch at 161 Dyckman Street, New York, New York. *Id.* ¶ 2.

---

[3] The Complaint does not plead any facts implicating defendant J.P. Morgan Chase & Co. ("JPMorgan"), a holding company, in the alleged wrongdoing. Accordingly, the Court dismisses defendant JP Morgan. *See, e.g.*, *Akhtar v. JPMorgan Chase & Co.*, No. 652274/2018, 2019 WL 4237985, at *3 (N.Y. Sup. Ct. Sep. 6, 2019) (dismissing JPMorgan on grounds that it "cannot be held liable for the alleged actions or inaction of Chase Bank" and noting that "[t]here is no dispute that [JPMorgan] is a holding company that does not provide banking services. There is also no dispute that Chase Bank provided banking services to [the plaintiffs], not [JPMorgan]"); *cf. In re Aluminum Warehousing Antitrust Litig.*, No. 13 MD. 2481 (KBF), 2015 WL 1344429, at *3 (S.D.N.Y. Mar. 23, 2015) (dismissing JPMorgan from action where plaintiffs failed to "set[] forth any specific facts that suggest any participation by . . . [JPMorgan] in the allegedly unlawful conduct. Instead, the claims as to them are based solely on corporate proximity").

KeyBank,TD Bank, Wells Fargo, and PNC are each foreign corporations authorized to do business in New York. *Id.* ¶¶ 3–6.

### B.    Factual Background[4]

The FAC alleges that Pincover maintained several accounts with Chase at its New York branch, located at 161 Dyckman Street, New York, New York. *Id.* ¶ 9. The accounts from which the funds were initially stolen were a checking account, -6890, a savings account, -8053, and later, two new accounts opened by the thieves, a checking account, -8321, and a savings account, -3957. *Id.* ¶ 14. Until October 2019, Pincover received paper statements for his accounts. *Id.* ¶ 25.

In October 2019, the FAC alleges, a thief changed the address on record for Pincover's Chase accounts from West 81st Street, in New York City, to a Miami, Florida address. *Id.* ¶ 15. No notice of this change was mailed to Pincover's West 81st address. *Id.* The FAC alleges that Pincover never resided in Florida and had never previously used a Florida address for his Chase accounts. *Id.* ¶ 30.

At or around this time, thieves also disabled paper statements mailed to the West 81st Street address, and made Pincover's accounts "paperless." *Id.* ¶ 17. Between October 2019 to June 2020, Pincover did not receive any paper statements for his Chase accounts; in June 2020, his attorney obtained such statements. *Id.*

In November 2019, Pincover's address on record was again changed, from the Miami, Florida address, to a Doral, Florida address. *Id.* ¶ 16. The FAC alleges, upon information and belief, that Pincover did not receive notice of this change. *Id.*

---

[4] These facts are drawn from the FAC and the cognizable materials incorporated therein. For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Between on or around November 1, 2019 and June 3, 2020—spanning some seven months—the thieves withdrew more than $325,000 from Pincover's Chase accounts through ATM withdrawals, ACH transfers, and checks. *Id.* ¶¶ 10, 22, 24. Of this, $61,495 was deposited at KeyBank, and $10,000 was deposited at Wells Fargo. *Id.* ¶¶ 72, 93. The thieves deposited the funds into fraudulent accounts held in the names of Shaazad Ali, Alexis Porto, Jill M. Mann, Victor Reynoso, and Edward Pincover (which was fraudulent) at KeyBank. *Id.* ¶ 66. The account into which funds were deposited at Wells Fargo was held in the name of Michael Wimpfheimer, Pincover's attorney. *Id.* ¶ 87. Upon information and belief, this account was opened using fraudulent identification. *Id.*

The theft was reported to the New York and Miami Dade police departments, the United States Secret Service, and the Federal Bureau of Investigation. *Id.* ¶ 10.

As to withdrawals by checks, the thieves stole $98,395 via that method. *Id.* ¶ 32. The checks were deposited in various accounts at TD Bank, Wells Fargo, KeyBank, PNC, and BHO, S.A (located in the Dominican Republic). *Id.* ¶ 34. Thefts of this nature occurred after the thieves ordered printed checks for one of Pincover's Chase accounts. *Id.* ¶ 21. The checks bore Pincover's West 81st Street address, but were mailed to a different address. *Id.* The FAC alleges, upon information and belief, that Chase never notified Pincover that checks had been ordered, or had been mailed to a different address than the one printed on the checks. *Id.*

None of the checks drawn during the relevant period were signed by Pincover; the FAC alleges that the signatures were "obvious forgeries." *Id.* ¶ 33. Pincover has always signed using his full name, "Edward Pincover," but the forgeries were signed "Ed Pincover." *Id.* Pincover also alleges that the handwriting on the checks is different from his. *Id.* Further, the checks beginning with #500 each bore Pincover's West 81st Street address, which was inconsistent with

the Doral, Florida address on the account statements. *Id.* ¶ 24. Upon information and belief, Chase never notified Pincover of these inconsistencies. *Id.*

Pincover highlights one check as particularly suspicious. He argues that it put Chase on actual notice of the fraud afoot in his account. On November 6, 2019, a check, #403, was cashed against one of Pincover's Chase accounts. *Id.* ¶ 19. This check was a "totally bogus check," and Chase reversed payment on it that same day. *Id.* Pincover alleges that he was never notified of this reversal; had he been notified of it, he claims, he might have appreciated that he had been targeted for fraud and acted to prevent the later thefts from his account. *Id.* Another check, properly numbered #403, dated February 14, 2020, was later drawn on the same Chase account. *Id.* ¶ 20.

Also indicative of irregularity, Pincover alleges, the activity in his account during the relevant period marked a "gross change" from the past. *Id.* ¶ 22. In previous years, Pincover's account activity had been limited, with almost no ATM withdrawals or ACH payments. *Id.* Beginning November 1, 2019, however, the monthly transactions in his accounts ran several statement pages. *Id.* The suspicious activity in the account included withdrawals made at non-Chase ATMs, including, on June 1, 2020, 15 withdrawals and on June 2, 2020, six withdrawals. *Id.* ¶ 23. Pincover alleges that Chase never notified him of suspicious activity in his account. *Id.*

In June 2020, after discovering the theft, Pincover submitted claim forms to Chase. *Id.* ¶ 36. Notice was initially given to Chase in person on June 3, 2020, and later, in writing, by letter dated June 4, 2020. *Id.* ¶ 46.

Chase has compensated Pincover in part, but Pincover alleges that $150,000, plus interest, remains due to him. *Id.* ¶ 38. The FAC alleges that Chase never gave Pincover any explanation—via its claims department or otherwise—why it was giving credit to Pincover for

certain claims, but not for others. *Id.* ¶ 47. Also unexplained, Chase gave Pincover a credit for some unauthorized withdrawals, but later took those credits back. *Id.*

The FAC alleges that Chase failed to credit Pincover for—among others—fraudulent transactions that had occurred within 30 days of the dates (June 3–4, 2020) when Pincover gave Chase notice of the fraud, that is, all fraudulent transactions between May 5 and June 4, 2020. *Id.* ¶ 48. Those transactions[5] totaled $26,937.11. *Id.* The FAC also alleges that Chase permitted an additional $6,776.58 in fraudulent charges against Pincover's account after June 4, 2020. *Id.* ¶ 50.

### C.    Procedural History

On April 21, 2021, the case was removed from New York Supreme Court in Manhattan to this District. Dkt. 1. On May 20, 2021, Chase moved to dismiss. *See* Dkts. 10–13. On June 16, 2021, Pincover appeared in this Court, and opposed the motion to dismiss. *See* Dkts. 18–21. On June 24, 2021, Wells Fargo moved to dismiss. *See* Dkts. 23–24.

On June 28, 2021, the Court ordered Pincover to file any amended complaint by July 15, 2021. Dkt. 26. On July 9, 2021, plaintiff filed the FAC. Dkt. 28. On August 13 and 19, 2021, Chase, Wells Fargo, and KeyBank moved to dismiss. *See* Dkts. 42–45; 40–41; 47–49. On September 9, 2021, Pincover opposed these motions. *See* Dkts. 50–53. On September 16, 17, and 20, 2021, Wells Fargo, Chase, and KeyBank filed replies. *See* Dkts. 56–58.

On November 4, 2021, the Court held an initial pretrial conference and stayed discovery pending the resolution of the motions to dismiss. *See* Dkt. 63.

---

[5] The Court construes the FAC as alleging that $26,937.11 was transferred out of the account by fraudulent check during this time period. Thirty days is the relevant limitation period for check transactions, pursuant to the Chase Deposit Agreement. *See infra* § III.C.2.

## II.   Legal Standards Governing Motions to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *Koch*, 699 F.3d at 145. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.   Pincover's Claims Against Chase

The FAC brings claims against Chase for (1) a violation of N.Y. UCC § 4–401; (2) negligence; (3) breach of contract; (4) fraudulent transactions within 30 days of notice, which the Court construes as claiming a breach of contract; (5) a violation of the EFTA; (6) and unjust enrichment. Chase moves to dismiss all claims. Before addressing each in turn, the Court will consider the cognizability of materials extrinsic to the FAC.

### A.   Cognizability of Extrinsic Materials

At the threshold, the Court must determine whether the two exhibits Chase has appended to its motion to dismiss are cognizable on that motion. *See* Dkt. 44 ("Deck Decl."), Ex. A; Dkt. 45 ("Wells Decl."), Ex. A. These are: (1) a signature card ("Signature Card") digitally signed by

Pincover[6] for accounts -8053 and -6890, assenting to the terms of the Chase Bank Deposit

Agreement ("Agreement"); and (2) a copy of the Agreement operative when Pincover signed the

Signature Card. The Court must also determine whether the 14 exhibits Pincover introduces for

the first time in his opposition to Chase's motion are cognizable. *See* Dkts. 51–52. The Court

finds both of Chase's exhibits, but only one of Pincover's, cognizable.

In general, in resolving a motion to dismiss under Rule 12(b)(6), a district court may

consider only the allegations on the face of the complaint and the materials it attaches. However,

the court may permissibly consider extrinsic materials where such are incorporated by reference

or where a document is one "upon which the complaint *solely* relies and which is *integral to the*

*complaint.*" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up) (emphasis in

original); *see also Cummings v. City of New York*, No. 19 Civ. 7723 (CM) (OTW), 2020 WL

882335, at *3 n.2 (S.D.N.Y. Feb. 24, 2020) ("In reviewing a motion to dismiss, a court may

consider, *inter alia*, (1) documents that are incorporated by reference into the complaint, and (2)

documents that, even if not incorporated by reference, the defendant has notice of and that are

'integral' to the complaint without converting the motion to dismiss to a motion for summary

judgment." (quotation marks omitted)). For a document to be incorporated by reference, the

complaint must make a "clear, definite and substantial reference to the document[]." *Helprin v.*

*Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). For the document to be

"integral," the complaint must "rel[y] heavily upon its terms and effects, and the plaintiff [must

have] actual notice of all the information in the documents and relied upon those documents in

---

[6] In his opposition to the motion to dismiss, Pincover asserts that his digital signature on that card was invalid. *See* Dkt. 53 ("Chase Opp'n") at 2–3. This dispute appears not to be of consequence, because Pincover has come forward with monthly account statements for his Chase account that contain the same notice provisions. He does not contend that these accounts were fraudulently opened. *See, e.g.*, Dkt. 51, Ex. B.

framing the complaint." *Anwar v. Fairfield Greenwich Ltd.*, 831 F. Supp. 2d 787, 791 (S.D.N.Y. 2011) (citations omitted), *aff'd sub nom. Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 9 (2d Cir. 2013) (summary order).

The Signature Card and Agreement easily meet this standard. They are integral to the FAC, which brings claims for breach of contract—at least one of which is premised on the Agreement's terms. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987)).

The analysis is different, however, for Pincover's exhibits. These include a copy of fraudulent check #403, *see* Dkt. 51, Ex. A; Pincover's account statements for July 2019–May 2020, *id.*, Exs. B–G; and notices of claim and claim letters to each of Chase, KeyBank, and Wells Fargo, *see* Dkt. 50, Exs. A–G. "Factual assertions raised for the first time in a plaintiff's opposition papers, including supporting affidavits and exhibits, are not properly considered by the Court on a motion to dismiss as that would constitute improper reliance on matters outside the pleadings." *MacCartney v. O'Dell*, No. 14 Civ. 3925 (NSR), 2016 WL 815279, at *3 (S.D.N.Y. Feb. 29, 2016) (cleaned up).

The notices of claims and claim letters are neither cited nor quoted in the FAC, apart from generalized references to the fact that Pincover claimed improper withdrawals. *See* FAC ¶¶ 12 ("Plaintiff did not become aware of these thefts or improper withdrawals from his accounts until in or about June 2020, when he immediately advised Chase and the other defendants."); 36 ("Plaintiff made claim against Chase on several occasions commencing via correspondence and claim forms in June 2020, through and including March 2021."); 46 ("Notice was initially given to Chase in person on June 3, 2020, and subsequently in writing, by letter dated June 4, 2020, advising of a massive fraud that had occurred herein."). A complaint's reference to the fact that

a communication occurred, without more, is insufficient to make its contents cognizable on a motion to dismiss. *See Moraes v. White*, No. 21 Civ. 4743 (PAE), 2021 WL 5450604, at *9 (S.D.N.Y. Nov. 22, 2021). These materials are therefore not cognizable.

Pincover's account statements, which are marked up to highlight the unauthorized withdrawals and transfers, are also not cognizable. The FAC alleges that funds were stolen from Pincover's account, and it recites the sum total of the improper withdrawals, but—apart from check #403—it does not identify any particular transaction as unauthorized. As such, the annotated account statements, which are not referenced in the FAC, sweep beyond its contents. *See Prignoli v. Bruczynski*, No. 20 Civ. 907, 2021 WL 4443895, at *6 n.9 (E.D.N.Y. Sept. 28, 2021) ("[T]he SAC's reference to the statements is not enough to consider them incorporated by reference in or integral to the SAC[.]"). These statements, too, therefore, are not cognizable.

The "totally bogus" check #403 is, however, cognizable. The FAC makes a "clear, definite and substantial reference to th[is] document[]." *Helprin*, 277 F. Supp. 2d at 330–31.

### B.   New York UCC § 4-401

Chase argues that Pincover's claim under New York UCC § 4–401, which covers the $98,395 stolen from Pincover's account via fraudulent checks, should be dismissed as time-barred under the deposit agreement governing his account, because Pincover did not challenge the bogus withdrawals within 30 days. Chase is incorrect.

### 1.   Applicable Legal Standards

New York's version of the UCC imposes a version of strict liability upon a bank that charges against its customer's account any "item" that is not "properly payable." *See* N.Y. UCC § 4–401(1); *Clemente Bros. Contracting Corp. v. Hafner-Milazzo*, 23 N.Y.3d 277, 283 (2014). In essence, this provision means that "a bank may not charge a check, or other written document defining a right to or liability for payment, bearing a forged signature against its customer's

account." *Clemente Bros.*, 23 N.Y.3d at 283; *see also Elden v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 08 Civ. 8738 (RJS), 2011 WL 1236141, at *5 (S.D.N.Y. Mar. 30, 2011). The FAC alleges that Chase is liable, under this provision, for the $98,395 stolen from Pincover's account via fraudulent checks. FAC ¶ 32.

Although N.Y. UCC § 4–401 sets out a presumption of strict liability, N.Y. UCC § 4–406 limits the bank's exposure in two ways.

First, it imposes a duty on the customer, to reasonably and promptly monitor his account, which, if breached, precludes the customer from recovering for such unauthorized withdrawals:

> (1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

> (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting [certain claims] against the bank.

N.Y. UCC §§ 4–406(1), (2). This limitation on the customer's right of recovery does not apply, however, if the "the customer establishes lack of ordinary care on the part of the bank in paying the items." *Id.* § 4–406(3).

Second, the UCC sets a one-year period as the default time limitation for bringing claims based on unauthorized withdrawals. *See id.* § 4–406(4). A bank may shorten that limitation by deposit agreement, provided the limitation it sets is not manifestly unreasonable. *See id.* § 4–103 ("The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured

11

if such standards are not manifestly unreasonable."); *Clemente Bros.*, 23 N.Y.3d at 283

(construing § 4–103 to apply to shortened limitation periods); *Fundacion Museo de Arte*

*Contemporaneo de Caracas-Sofia Imber v. CBI-TDB Union Bancaire Privee*, 996 F. Supp. 277,

291 (S.D.N.Y. 1998) (same), *aff'd*, 160 F.3d 146 (2d Cir.).

### 2.    Analysis

Chase argues that the claim the FAC asserts under the UCC is barred by the Agreement,

which required Pincover to report any unauthorized activity to Chase within 30 days.  It

provided:

> You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (for example, paperless statements) if:
>
> • A check that you did not authorize or is altered is listed on the statement;
>
> • Your account statement contains any errors; or
>
> • You did not receive your scheduled statement.
>
> . . . .
>
> If you do not comply with the requirements above, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way relating to the checks or errors.  In addition, if you fail to notify us of any unauthorized check within 30 days (14 days in New York) after we mail, or in any other way make available, a statement that lists an unauthorized check, we are not required to reimburse you for unauthorized checks initiated by the same wrongdoer(s) that we pay after that time.

Deck Decl., Ex. A.

As Chase notes, the FAC does not allege that Pincover notified Chase within 30 days of

receiving the statement(s) at issue of the authorized withdrawals from his account.  On the facts

pled, however, this fact does not entitle Chase to dismissal.  That is so for two reasons.  First, it

is disputed whether the bank statements were available to Pincover.  And second, Chase

allegedly failed to exercise ordinary care with Pincover's account.

      *a.*     *The disputed availability to Pincover of his bank statements*

As noted, under N.Y. UCC § 4–406(1), to place the onus on a customer to "exercise reasonable care and promptness to examine the statement and to discover his unauthorized signature or any alternation on an item," a bank must, *inter alia*, make bank statements available to the customer. *See Clemente Bros.*, 23 N.Y.3d at 285 ("[T]he application of UCC 4–406(4) is contingent upon the bank providing the customer with account statements and copies of the items paid under UCC 4–406(1)."). A bank may make statements and items available in one of three ways: it may "supply the items to the customer with the statement of account, hold the items for the customer, or 'otherwise in a reasonable manner make[] the statement and items available.'" *Id.* at 286 (quoting N.Y. UCC § 4–406 cmt. 2). The latter provision is meant for "unusual situations," such as when a "bank knows a customer has left a former address but does not know any new address to which to send the statement or item or to obtain instructions from the customer." N.Y. UCC § 4–406 cmt. 2. "Any court has the power to determine that a particular action or practice of a bank, other than sending statements and items or holding them pursuant to instructions, is not reasonable." *Id.*

Courts have found the "availability" requirement not satisfied where the customer did not actually receive account statements and items and did not authorize the bank to send statements and items to the address to which these were sent. *See, e.g.*, *Matin v. Chase Manhattan Bank,* 781 N.Y.S.2d 158, 159 (2004) (availability requirement not satisfied where "plaintiff allege[d] that the statements were not mailed to him or to a person to whom he directed because the bank sent the statements to the address on a forged change of address card"); *Robinson Motor Xpress, Inc. v. HSBC Bank, USA,* 826 N.Y.S.2d 350, 354 (2006) (bank did not make statements available where authorized signatory had not changed account of record to which statements were sent); *Est. of Merna v. Simuro*, 904 N.Y.S.2d 197, 199 (2010) (denying summary judgment where bank

failed to eliminate issues of fact as to whether plaintiff authorized the mailing of account statements to the address on record with the bank); *Fundacion Museo*, 996 F. Supp. at 290–91 (barring bank from asserting § 4–406 defense where it could not demonstrate that customer actually received statement and items); *Elden*, 2011 WL 1236141, at *6–7 (finding bank's offering of online banking insufficient to make fraudulent checks available to customer where customer never authorized receipt of checks online).

Here, the FAC—whose well-pled allegations must be taken as true on Chase's motion to dismiss—alleges that Pincover never received his account statements during the relevant time period or notice of the fraudulent checks. And it alleges that Pincover authorized neither the serial changes of address on the account—first to the Miami, Florida address, and later to the Doral, Florida address—nor the change to paperless statements. *See* FAC ¶¶ 15–17, 19–21, 23. These factual allegations block Chase from attaining dismissal of Pincover's UCC claim.

Chase seeks to avoid this result by noting, as to the paperless statements, a provision in the Agreement that: "You must notify us in writing within 30 days after we mail a statement or otherwise make a statement available (*for example, paperless statements*)." (emphasis added). Chase appears to argue that sending paperless statements satisfied its duty to make statements available. Dkt. 57 ("Chase Reply") at 5. But although the UCC permits modification by contract, under the caselaw, to be made available, a statement must have been sent or made available via a method and at an address assented to by an authorized account holder. Here, although the FAC does not allege that Pincover lacked a method by which to access paperless statements, it squarely alleges that he did not authorize the change to paperless account statements. For good measure, it pleads facts as to why Pincover would not have done so:  He is

14

nursing-home-bound and lacks the internet and computer savvy necessary—or a helper—to access paperless statements. *Id.* ¶¶ 7, 17–18.

Chase next argues that, even if it failed to make statements available to Pincover, he failed to notify Chase within 30 days, as the Agreement required, that he had not received his monthly statements. But as a basis for dismissal, that argument is defeated by another provision in the Agreement, which states: "We will make available an account statement for checking and savings accounts monthly, unless the product information for your account indicates otherwise. *If your account has had no activity during the monthly statement period, other than the payment of interest, we may not make a statement available.*" Deck Decl., Ex. A (emphasis added). Here, the FAC alleges that Pincover's accounts—putting aside the fraudulent charges—had little to no activity. *See* FAC ¶¶ 22 ("Plaintiff had for years, relatively limited account activity and almost never any ATM withdrawals or ACH payments), 23 (describing little to no ATM activity before October 2019). In light of Chase's admonition to Pincover that if there was no account activity a statement might not be made available, the inference is fair that a person in Pincover's situation would not have viewed the absence of a statement as triggering a duty to notify Chase that he had not received one.

On the pleadings, Pincover's failure to notify Chase that he had not received account statements therefore does not bar him from bringing claims under the N.Y. UCC against Chase beyond the 30-day period. And the FAC pleads that, apart from the statements, Chase did not take any steps to otherwise notify him of potential wrongdoing in his account. *See id.* ¶¶ 16, 19, 21–22, 24; *cf. Weiser v. Citigroup, Inc.*, 109 N.Y.S.3d 14, 17 (2019) (plaintiff's failure to receive account statements insufficient to overcome 30-day notification requirement where plaintiff was also forwarded copies of cancelled checks). Chase therefore may not obtain dismissal based on

the 30-day notice period, because the FAC adequately alleges that Chase did not make his account statements and items available to its customer, Pincover.  In discovery, of course, Chase will be at liberty to establish that the facts are other than as pled.

> b. *Chase's alleged failure to exercise ordinary care with respect to Pincover's account*

Independently, under Section 4–406(3), even where a bank rebuts the presumption of strict liability by showing that the customer failed to promptly notify the bank of unauthorized checks, the customer can shift the presumption of liability back to the bank by establishing that, in paying the unauthorized check, the bank failed to exercise ordinary care.  The FAC pleads sufficient facts here to plausibly plead such a lapse on Chase's part.  These allegations—which form the basis of Pincover's separate claim for negligence, discussed *infra*, § III.C—require sustaining his N.Y. UCC claim at this stage.

Specifically, the FAC alleges the following facts which, considered together, fairly plead a failure by Chase to exercise ordinary care in monitoring his account for fraud.  These include that Chase permitted thieves to order checks from Pincover's account, FAC ¶ 21; that Chase never notified Pincover that it was delivering checks with his address printed on them to a Florida address, *id.*; that all of the checks contained "obvious forgeries" of Pincover's signature and handwriting, *id.* ¶ 33; that when Chase reversed a "totally bogus" check, it never notified Pincover of that reversal or took any steps to prevent further fraud in his account, *id.* ¶ 19; and that it permitted a "gross change" in account activity over the span of several months without any notice to Pincover, *id.* ¶ 22.

Chase argues, however, that Pincover is time barred from bringing a claim asserting a lack of ordinary care by the same 30-day notice period set forth in the Agreement.  Chase relies on *Clemente Bros. Contracting Corp. v. Hafner-Milazzo*, in which the New York Court of

Appeals read a provision in an agreement governing an account that limited the notice period to 14 days to also reduce, to the same time period, the window within which a customer can assert a lack of ordinary care against the bank. 23 N.Y.3d 277 at 287–88; *see also In re Est. of Ray*, 24 Misc. 3d 285, 291 (N.Y. Sur. Ct. 2009). But although that construction of the Agreement seems to follow from *Clemente Bros.*, limiting Pincover to 30 days in which to so claim raises the question—as the Court of Appeals recognized in *Clemente Bros.*—"whether shortening the one-year period to [30] days is manifestly unreasonable." 23 N.Y.3d at 287. That is because, although the UCC permits variation by agreement, a bank can limit its duty to exercise ordinary care, including setting limitations periods for claiming breaches of this duty, only where the variation is not manifestly unreasonable. *Id.*; *see also* N.Y. UCC § 4–103(1). In *Clemente Bros.*, the Court of Appeals found a 14-day period not manifestly unreasonable but, "stress[ed] . . . that [its] holding is limited to the case of a corporate entity that either is financially sophisticated or has the resources to acquire professional guidance." 23 N.Y.3d at 289. In language that all but anticipated this case, the Court of Appeals added: "It could well be unreasonable for banks to use contracts of adhesion to impose an exacting 14-day limit on unsophisticated customers . . . including, for example, the elderly[.]" *Id.*

On a motion to dismiss, the Court cannot find that the 30-day limit that Chase proposes to impose on Pincover to challenge its lapses of ordinary care was not manifestly unreasonable. The Court of Appeals emphasized in *Clemente Bros.* that this determination is fact-intensive and customer-specific. *See id.* (examining accountholder company's number of employees, funds, resources, and knowledge of the 14-day requirement). The FAC here alleges sufficient—indeed ample—facts on which it could find manifestly unreasonable to hold Pincover to such a deadline to protest Chase's lapses in failing to alert him to the irregular activity in his account. As

17

alleged, Pincover was approximately 80 years old during the events at issue, FAC ¶ 7; lived in a

nursing home, *id.*; was not computer or internet savvy, *id.* ¶ 17; was victimized by a fraudster's

diversion of his hard-copy account statements to addresses not associated with him; and lacked

kin—or anyone else—to help him navigate the paperless statements to which, allegedly without

his assent, Chase switched as a means of notifying him of account activity, *id.*¶ 18.  Pending

discovery into whether these factual allegations are true—and into other facts that may bear on

the reasonableness of imposing this deadline—it is premature to hold that Chase's bid to limit

Pincover to a 30-day complaint window was not manifestly unreasonable.

The Court accordingly denies Chase's motion to dismiss Pincover's N.Y. UCC claim.

### C.     Negligence

The FAC separately brings a claim for common law negligence, based on the same

factual averments as its argument above, to the effect that Chase failed to exercise ordinary care.

Chase moves to dismiss that claim, on the grounds that a customer cannot assert a common law

negligence claim against a bank, because such are preempted by the UCC.

The Court need not address, at this stage, Chase's argument that negligence claims are

preempted by the UCC.  That is because the Court understands Pincover not to be bringing a

freestanding negligence claim based on the common law, but instead to be using the term

"negligence" to capture the claim Pincover asserts of a lack of ordinary care under UCC § 4–

406(3)—a showing which, if established, can preserve a claim based on UCC § 4–401.  New

York state courts have frequently styled such claims as viable "negligence" claims, where

brought, as here, for the purpose of defeating the bank's affirmative defense to a UCC claim that

the customer failed to monitor his account. *See, e.g., Bernstein v. Bank of Am.*, 104 N.Y.S.3d

142, 143 (2019); *Redgrave Elec. Maint., Inc. v. Cap. One, N.A.*, 76 N.Y.S.3d 198, 201 (2018);

*Monreal v. Fleet Bank*, 95 N.Y.2d 204, 206 (2000); *Travelers Indem. Co. v. Scalea*, No. 85 Civ.

0400 (WK), 1987 WL 27737, at *3 (S.D.N.Y. Dec. 4, 1987); *Pippo v. Fleet Bank, N.A.*, No.

5218-00, 2002 WL 226734, at *5 (N.Y. Sup. Ct. Jan. 30, 2002); *see also Greenberg, Trager &*

*Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 577 (2011) (analyzing such claims under

normal negligence standards by giving "[t]he term 'ordinary care' . . . its normal tort meaning.");

*Putnam Rolling Ladder Co. v. Mfrs. Hanover Tr. Co.*, 74 N.Y.2d 340, 346 (1989) (same). The

Court will permit Pincover to pursue his negligence claim, thus understood, for the time being,

mindful that it appears in substance to wholly replicate his UCC claim. Should the case

approach trial, due attention will be required as to whether the two claims can coexist.

### D.    Breach of Contract

Chase moves to dismiss Pincover's claim "for fraudulent transactions within thirty days

of notice." The Court construes this as claim of breach of contract, as it is premised on the

Agreement's 30-day notice period.

Chase argues that because Pincover did not report the first unauthorized transaction

within 30 days of it appearing on a monthly account statement, he is barred, under the

Agreement, from challenging any of the ensuing transactions carried out by the "same

wrongdoer." On this point, the Agreement states, in relevant part:

> [I]f you fail to notify us of any unauthorized item within 30 days (14 days in New
> York) after we mail, or in any other way make available, a statement that lists an
> unauthorized item, we are not required to reimburse you for unauthorized items by
> the same wrongdoer(s) that we pay after that time.

Deck Decl., Ex. A. For two separate reasons, Chase's argument fails.

First, as discussed above, the FAC adequately pleads that Chase did not "make available"

to Pincover any statements during the relevant time. Pending discovery, that precondition to the

contractual bar above therefore has not been established. And second, the face of the FAC does

not establish that the "same wrongdoer" drained Pincover's account of each unauthorized item

during the relevant time period.  Although Chase is at liberty to attempt to establish this point in discovery, on the pleadings, it cannot be assumed that the same wrongdoer victimized Pincover on each occasion.

The Court accordingly denies Chase's motion to dismiss the breach of contract claim.

**E.      Remaining Claims**

The Court next considers the FAC's claims remaining claims against Chase—each of which it holds to have been waived.

**1.      Applicable Legal Standards**

"A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Williams v. Mirabal*, No. 11 Civ. 336 (JMF), 2013 WL 174187, at *2 (S.D.N.Y. Jan. 16, 2013) (quoting *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)). *See also Daniel v. City of New York*, No. 20 Civ. 11028 (PAE), 2021 WL 5988305, at *4 (S.D.N.Y. Dec. 16, 2021); *Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 684 (S.D.N.Y. 2020) ("Gonzalez abandoned these claims because he did not address Defendants' arguments for summary judgment in his opposition."), *aff'd*, 845 F. App'x 11 (2d Cir. 2021) (summary order); *Robinson v. Fischer*, No. 09 Civ. 8882 (LAK) (AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting cases), *report and recommendation adopted*, 09 Civ. 8882 Dkt. 51 (Jan. 18, 2011); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue . . . which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir.).

### 2.   Application

#### a.   *Electronic Transfer Fund Act violations*

The balance of the fraudulent transactions, which include ATM withdrawals and ACH payments, are governed by the EFTA, under which the FAC brings a claim.  FAC at 10.  In moving to dismiss, Chase argued that this claim was time-barred, for two independent reasons. Dkt. 43 ("Chase Memo") at 12–13.  Pincover did not defend this claim.  The Court treats this claim as abandoned and dismisses it.

#### b.   *Catch-all breach of contract claim*

The FAC also brings a generic claim for "breach of contract," but did not point to any provision of the relevant deposit agreement that Chase breached.  *See* FAC ¶ 41 ("Plaintiff demands judgment against defendant Chase for breach of contract.").  In moving to dismiss, Chase argued that he failed to identify, with any specificity, the provision of the contract that was breached.  In his opposition to the motion to dismiss, Pincover does not defend this claim, including to respond to this argument.  This Court treats this vague claim, too, as abandoned, and dismisses it.

#### c.   *Unjust enrichment*

Finally, the FAC brings a claim against Chase for unjust enrichment.  In its motion to dismiss, Chase argues that this claim must be dismissed for two reasons.  First, it notes, there is an agreement governing Pincover's account, which precludes Pincover from pursuing relief in quasi-contract.  *See* Chase Memo at 17 (citing *Richard v. Glens Falls Nat'l Bank*, 2021 WL 810218, at *15 (N.D.N.Y. Mar. 3, 2021) ("[N]o party seriously disputes that the Account Agreement is a valid, enforceable contract that governs the issues raised in the Complaint; the only disputes relate to the interpretation of particular provisions.  Under these circumstances, courts in this Circuit have generally dismissed quasi-contract claims.")).  Second, it notes,

Pincover has not identified any benefit that Chase retained by permitting the unauthorized

withdrawals. *Schroeder v. Cap. One Fin. Corp.*, 665 F. Supp. 2d 219, 226 (E.D.N.Y. 2009)

("[T]he only party that benefitted from the alleged wrongful transfer of funds was the

unauthorized third party to whom the funds were transferred. Since there is no benefit to the

Bank stemming from the allegedly wrongful transfer of funds, the court grants the motion for

summary judgment and dismisses Plaintiff's cause of action for unjust enrichment.".

In his opposition, Pincover has not defended this claim, including to address these

arguments in his opposition. This claim, too, is waived.

## IV.    Claims Against KeyBank and Wells Fargo

The FAC brings two claims against KeyBank and Wells Fargo, for negligence and unjust

enrichment. Both defendants move to dismiss both claims. The Court grants those motions.

### A.    Negligence

KeyBank and Wells Fargo argue that because Pincover undisputedly was not a customer

of either, neither owed him a duty of care to prevent thieves from depositing the stolen funds into

accounts held at each bank. That is correct and requires dismissal of the negligence claim

against both defendants.

"Because a finding of negligence must be based on the breach of a duty, a threshold

question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party."

*Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. 2013) (quoting

*Espinal v. Melville Snow Contractors, Inc.*, 746 N.Y.S.2d 120, 122 (2002)). It is well-settled

under New York law that banks do not owe non-customers a duty of care in this context. *See,*

*e.g., Fisher v N.Y. Chase Manhattan Bank*, 16 Civ. 6030 (VSB), 2018 WL 1274560, at *4

(S.D.N.Y. Mar. 8, 2018), *aff'd sub nom. Fisher v JPMorgan Chase Bank, N.A.*, 740 F. App'x

745 (2d Cir. 2018) (summary order); *Lerner v FleetBank, N.A.*, 459 F.3d 273, 286–87 (2d Cir.

2006) ("[B]anks do not owe non-customers a duty to protect them from the intentional torts of their customers . . . . With billions of banking transactions occurring in New York alone, this would be the equivalent of making New York banks liable to the world's banking public."); *In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("Neither the Plaintiffs nor the Court have been able to locate a case which even suggests that New York law imposes upon banks a duty to protect non-customers from a fraud involving depository accounts."); *cf. Greenberg*, 17 N.Y.3d at 576–78.

The FAC does not contain any allegations of any relationship or direct dealings between Pincover and either KeyBank or Wells Fargo. Pincover does not allege that he at any point became a customer of either. Accordingly, neither bank owed Pincover a duty of care. The FAC therefore does not state a viable negligence claim against either.

### B.    Unjust Enrichment

KeyBank and Wells Fargo move to dismiss the unjust enrichment claims against them, on the ground that, as pled, neither retained a benefit from the deposit—by the thief or thieves who victimized Pincover—of funds into accounts at their banks. They are correct.

To state a claim for unjust enrichment under New York law, "a plaintiff must establish (1) that the defendant benefitted; (2) at plaintiff's expense; and (3) that 'equity and good conscience require restitution.'" *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 275 (S.D.N.Y. 2014) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)) (citation omitted); *see also Albrechta v. Broome Cnty. Indus. Dev. Agency*, 710 N.Y.S.2d 709 (2000).

The FAC, however, does not allege that either KeyBank or Wells Fargo benefitted from the deposit of the stolen funds into customer accounts at those banks. Funds held in the account of a bank's customer do not represent a benefit to a bank. Instead, they result in the bank's incurring a debt to the account holder. *See Acevado v Citibank, N.A.*, No. 10 Civ. 8030 (PGG),

2012 WL 996902, at *11 (S.D.N.Y. Mar. 23, 2012) (quoting *Geler v Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) ("[A] bank receiving a general deposit is not a bailee of the deposited funds, but merely owes an ordinary debt to the depositor.")); *see also L. Offs. of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 627 (2d Cir. 2012) (summary order) (deposit of funds into a bank account results in the bank's "indebtedness" to its customer as the accountholder).

The Court accordingly dismisses the FAC's claims for unjust enrichment against KeyBank and Wells Fargo.

## CONCLUSION

For the reasons above, the Court grants in part and denies in part the motion to dismiss by defendant Chase, and grants in full the motions to dismiss by defendants KeyBank and Wells Fargo.

This case will now proceed to discovery. The Court directs the parties to submit a proposed joint case management plan, consistent with the Court's Individual Rules, within one week of this order.

The Court respectfully directs the Clerk of the Court to close the motions pending at dockets 10, 23, 40, 42, and 47.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: March 22, 2022
New York, New York